IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

FILED

| | | |
|---|---|---|
| RONNIE REGISTER and | ) | MAR 2 6 2002 |
| JUDY REGISTER d/b/a | ) | |
| LAKESIDE OIL COMPANY, | ) | CLERK |
| | ) | U.S. DISTRICT COURT |
| Plaintiffs, | ) | MIDDLE DIST. OF ALA |
| | ) | |
| v. | ) | CIVIL ACTION NO. 01-T-858-E |
| | ) | |
| RUS OF AUBURN and | ) | |
| OMNI SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Pursuant to an order of this court entered on March 13, 2002, a hearing was held on the issue of whether federal subject-matter jurisdiction properly exists over this case. Taking due consideration of the insights offered by the parties in their briefs and at oral argument, the court is convinced that remand is the appropriate course of action.

I.

Defendants removed this case from state court on the alleged basis of diversity jurisdiction. 28 U.S.C.A. § 1332. A removing defendant bears the burden of proving proper federal jurisdiction, Leonard v. Enterprise Rent-a-Car, 279

84

EOD 3/26/02

EXHIBIT
J

F.3d 967, 972 (11th Cir. 2002), and "[a] conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319-20 (11th Cir. 2001). When proper jurisdiction is a close question, "uncertainties are resolved in favor of remand," Burns v. Windson Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994); cf. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 67, 107 S.Ct. 1542, 1548 (1987) (Brennan, J., concurring) ("the prudent course for a federal court that does not find clear congressional intent to create removal jurisdiction will be to remand to state court") (emphasis in original).

Diversity jurisdiction, of course, exists where the suit is between citizens of different States and the amount in controversy exceeds the statutorily prescribed amount, in this case, $ 75,000. 28 U.S.C.A. § 1332. There is no dispute that the parties to this lawsuit are of diverse citizenship. It is much more unclear whether the amount-in-controversy has been or can be met. However, to justify a remand to state court, "It must appear to a legal certainty that the claim is really

2

less than the jurisdictional amount." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 590 (1938).

## II.

Plaintiffs filed a complaint in an Alabama state court, alleging that an "Ecological Fee" of $ 5 and sales taxes on that fee were wrongfully charged to them by defendants every week for approximately seven years under a contract for the delivery of uniforms and supplies. The complaint, containing claims of breach of contract, fraud, and unjust enrichment, demanded compensatory damages not in excess of $ 74,500. Defendants removed the case to this federal court, contending that "despite plaintiffs' assertions, the amount in controversy exceeds $ 75,000." Plaintiffs agreed to the removal, and amended their complaint to assert an entitlement to recovery in excess of $ 75,000 and to demand punitive damages. They also bring similar claims based on a class of customers affected by defendants' practices.[1]

--------

1.   The class claims cannot serve as a predicate for the amount in controversy requirement: plaintiffs do not assert
(continued...)

3

The parties now agree that, based on the claims of plaintiffs at the time of removal, federal jurisdiction was not proper. At that time, plaintiffs demanded only compensatory damages, and, even under a healthy view of their allegations, their compensatory damages would not have exceeded $ 2,000. However, both plaintiffs and defendants now argue that the amended complaint filed by plaintiffs, which adds a demand for punitive damages, meets the $ 75,000 amount-in-controversy requirement for diversity jurisdiction, and, therefore, cures the jurisdictional defect.

It is clear that a jurisdictional defect, if later cured, is not an appropriate basis for remand. Caterpillar, Inc. v. Lewis, 519 U.S. 61, 76-77, 117 S.Ct. 467, 476-77 (1996). However, if the amended complaint in fact does not succeed in curing the jurisdictional defect, that is, that even as alternatively pled the amount-in-controversy requirement has not been met, then federal subject-matter jurisdiction still does not exist over the lawsuit.

_____

1.   (...continued)
punitive damage claims on behalf of the class members, and no class member has been shown to have more than $ 75,000 in compensatory damages.

The parties rest on the new punitive-damages claim to establish a possibility of establishing an amount in controversy exceeding $ 75,000. Given the small potential for compensatory damages, which will not exceed $ 2,000, the jurisdictional amount will largely be met by the specter of an relatively enormous punitive-damages award: an amount of punitives about 36-37 times the compensatory damages.

## III.

The due process clause of the fourteenth amendment prohibits States from imposing punishment on a tortfeasor in the form of a judgment that includes a "grossly excessive" punitive-damages award. TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 454, 113 S.Ct. 2711, 2718 (1993). The Supreme Court, in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589 (1996), recently re-explored the due-process implications of excessive punitive-damages awards. Using the methodology refined by Gore, it is apparent that a punitive-damages award in this case of $ 73,000, or 36-37 times the compensatory damages, would contravene due process protections.

5

According to the Gore Court, there are three "guideposts" in determining whether a given punitive-damages award would be excessive: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive-damages award; and (3) the difference between appropriate or comparable civil penalties for the defendant's conduct, both in the form of criminal sanctions and other jury awards, and the punitive-damages award.   517 U.S. at 574-75, 116 S.Ct. at 1598-99.

## Degree of Reprehensibility

Some types of conduct are more reprehensible than others, and therefore more deserving of a substantial punitive-damages award.   Gore, 517 U.S. at 575, 116 S.Ct. at 1599.   For example, negligent conduct is less reprehensible than intentional misconduct, and infliction of economic harm is less reprehensible than infliction of physical harm.  Id. at 576; 116 S.Ct. at 1399.  A pattern of misconduct is more reprehensible than individual acts of wrongdoing.  Id. at 576-77, 116 S.Ct. at 1599-1600.

6

The conduct in this case, as alleged, is a multi-year pattern of fraud in concealing the true nature of charges to customers' accounts. The intentional nature of the wrongful acts, as well as the allegation of a continuing pattern of fraud, properly increases the constitutional limits on punitive damages. However, the nature of the harm in this case is purely economic, and very slight economic harm at that. Although "infliction of economic injury, especially when done intentionally through affirmative acts of misconduct ... or when the target is financially vulnerable, can warrant a substantial penalty," id. at 576, 116 S.Ct. at 1599, at the rate of $ 5 per week, the harm inflicted in this case, involving non-vulnerable arms-length businessmen, cannot justify a large punitive-damages award.

Ratio

Punitive damages must bear a reasonable relationship to the actual or potential harm likely to result from the defendant's conduct. Gore, 517 U.S. at 581, 116 S.Ct. at 1602. The "reasonable relationship" inquiry is most commonly

7

expressed by examining the ratio between the awarded damages types. Id. at 580, 116 S.Ct. at 1601:

The parties to this case insist that a ratio of 36 to 1 of punitive damages to compensatory damages would not offend constitutional due-process sensibilities. Based on relevant Supreme Court decisions on the issue, that proposition seems unlikely. In Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24, 111 S.Ct. 1032, 1046 (1991), the Supreme Court noted that a punitive-damages award of four times the compensatory damages may have approached an unconstitutional ratio, although, ultimately, the Court found that it did not, in that case, "cross the line into the area of constitutional impropriety." The Haslip case involved acts of affirmative misconduct, specifically, withholding the payment of insurance premiums which led to lack of coverage for a sick insured, 499 U.S. at 5-6, 111 S.Ct. at 1036-37, which, under Gore, was specifically identified as a factor that would have increased the potential for constitutional punitive damages. 517 U.S. at 579, 116 S.Ct. at 1601. Yet the Haslip Court still expressed some concern that a 4:1 ratio approached constitutional limits.

8

However, the Court has consistently disclaimed the use of a strict mathematical ratio in making the excessiveness inquiry. See, e.g., Gore, 517 U.S. at 582, 116 S.Ct. at 1602. According to the Gore Court, "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." Id. In addition, the ratio may be substantially higher if there is potential or likely harm from the defendant's conduct that is not adequately captured by the compensatory damages award. TXO v. Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 460, 113 S.Ct. 2711, 2721 (1993).

In this case, there is no particularly egregious conduct that would justify bumping the acceptable ratio to a higher level. There is also no potential or likely harm in this case above the claimed compensatory damages: plaintiffs, now aware of the practice of charging "Ecological Fees" on their

account, have opted out of the contractual relationship and have discontinued their business with defendants.

The 36:1 or 37:1 ratio certainly seems high. This factor weighs toward finding that any such award would contravene due-process protections. In this vein, most instructive, but not quite on point, is the recent Eleventh Circuit decision in Smith v. GTE Corp., 236 F.3d 1292 (11th Cir. 2001). The question in that case was whether the amount in controversy could be met so as to provide federal subject-matter jurisdiction in a case involving a class of consumers with actual damages ranging from $ 440 to $ 1400. 236 F.3d at 1298, 1300 n.5. These damages accrued from the "fraudulent and excessive lease rates charged by GTE" that "ranged from $ 3 to $ 10 a month," and, like in the instant case, the consumers brought breach-of-contract, fraud, and unjust enrichment claims. Id. at 1300 n.5. The Eleventh Circuit found that

> "[T]o satisfy the amount in controversy
> requirement, each class member would have
> to recover over $ 73,000 in punitive
> damages. For that to be possible, the
> class, which appears to consist of at least
> 36,000 members, would have to recover over
> $ 2.628 billion in punitive damages. That
> recovery is not possible as a matter of

10

> law, see generally BWM of North America,
> Inc. v. Gore ..., and so, diversity
> jurisdiction cannot be founded upon the
> claim for punitive damages."

Id. at 1304. Obviously, the focus of the Eleventh Circuit in

the Smith case was the aggregate class punitive-damages

award:[2] given the large numerical nature of the class, the

potential punitive-damages award was totally out of proportion

to the alleged harm and, consequently, would violate due-

process principles.     However, this court also thinks it

salient in comparison to the individual claims asserted by

plaintiffs; because there are no aggravating circumstances in

the instant case, the ratio between punitive damages and

compensatory damages is just as egregious.

One federal court has noted that, following the decision

in Gore, "Alabama trial courts are now routinely ordering

remittitur in cases in which punitive damages exceed a ratio

---

2.    "The named plaintiffs state that if class
certification is denied, they will proceed in an individual
lawsuit, and in such a suit, they may realistically recover an
amount of punitive damages, especially when coupled with a
recovery of attorney's fees and the value of the requested
injunctive relief, that satisfies the amount in controversy
requirement.     Perhaps, but this suit was filed as a class
action and until the class certification is denied, we must
treat it as a class action." Smith, 236 F.3d at 1304 n.12.

11

of three to one over actual damages." Arnold v. Guideone Specialty Mutual Ins. Co., 142 F.Supp.2d 1319, 1322 (N.D. Ala. 2001). The Gore decision certainly sparked a resurgence of remittiturs in the state courts, see, e.g., American Pioneer Life Ins. Co. v. Williamson, 704 So.2d 1361 (Ala. 1997) (holding that $ 2 million punitive-damages award in case involving disallowance of commissions must be reduced from 8:1 to 3:1 ratio to compensatory damages to be reasonably related to degree of reprehensibility); Talent Tree Personnel Services, Inc. v. Fleenor, 703 So.2d 917 (Ala. 1996) (holding that $ 2 million punitive-damages award in fraud case involving affirmative miscalculation of commission payments must be reduced to $ 1.5 million, an acceptable 5:1 ratio to compensatory damages of $ 300,000).

However, the real comparator cases are those involving slight economic damages and a relatively large punitive-damages award. Two examples of recent cases bearing those characteristics indicate that the 36:1 or 37:1 ratio is a strong indication of unconstitutionality in the post-Gore era. The Arnold court remanded a claim of bad-faith failure to pay an insurance claim in which plaintiffs were entitled to

12

approximately $ 1,000 actual damages and attempted to rely on
a substantial punitive-damages award to meet the amount-in-
controversy requirement.   142 F.Supp.2d at 1321-22.   In Tyson
Foods, Inc. v. Stevens, 783 So.2d 804, 809 (Ala. 2000), the
Alabama Supreme Court held that a $ 75,000 punitive-damages
award in nuisance case, when jury awarded $ 2,500 in
compensatory damages, a 30:1 ratio, was unreasonable and must
be reduced to comply with the guarantee of due process.

### Sanctions for Comparable Misconduct

The third guidepost for excessiveness is a comparison of
the punitive-damages award and the civil or criminal penalties
that could be imposed for comparable misconduct.   Gore, 517
U.S. at 583, 116 S.Ct. at 1603.

A violation of the Alabama Deceptive Trade Practices Act,
1975 Ala. Code § 8-19-1 et seq., would subject defendants to
a fine up to $ 2,000 per violation.[3]  A private action under
that statute caps punitive damages at three times the amount

---

3.    Among other conduct, the Deceptive Trade Practices
Act prohibits "Engaging in any other unconscionable, false,
misleading, or deceptive act or practice in the conduct of
trade or commerce."   1975 Ala. Code § 8-19-5(23).

of actual damages awarded.    1975 Ala. Code § 8-19-10(a)(2).
Obviously, other statutes and causes of action provide redress
for the conduct of defendants in this case, but the Deceptive
Trade Practices Act, presumably tailored with a mind to the
policies of preventing misleading business practices, provides
some context for this discussion.    Given this statute, the
penalties for comparable misconduct do not indicate that a
substantial award of punitive damages is appropriate or even
constitutional for the alleged conduct in this case.


                                IV.

    The Gore guideposts therefore seem to indicate that the
amount in controversy cannot be met in this case without
transgressing due-process protections.    Rightly so: if this
type of case, involving a relatively tiny amount of purely
economic, calculable harm, with no real prospect of future
harm, were found to satisfy the amount-in-controversy
requirement and thereby proceed in federal court, then almost
any claim involving fraud and the possibility of punitive
damages could do so.    Clearly, that is not the way that access
to the federal forum is designed.    The court therefore finds

                                14

that "[it] appear[s] to a legal certainty that the claim is really less than the jurisdictional amount," St. Paul Mercury Indemnity Co., 303 U.S. at 288-89, 58 S.Ct. at 590, and that no subject-matter jurisdiction exists in this court over this case.

Therefore, it is the ORDER, JUDGMENT, and DECREE of the court that this case is remanded to the Circuit Court of Barbour County, Alabama, pursuant to 28 U.S.C.A. § 1447(c), for want of subject-matter jurisdiction.

It is further ORDERED that all motions are left for disposition by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect remand.

DONE, this the 26th day of March, 2002.

                                MYRON H. THOMPSON
                        UNITED STATES DISTRICT JUDGE